**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

|  |  |  |
|---|---|---|
| **MIGUEL RAMIREZ JR., individually and on behalf of all others similarly situated,** | ) ) ) | No. 3:25-cv-00146 |
| **Plaintiff** | ) ) ) |  |
| **v.** | ) ) |  |
| **ZTEX CONSTRUCTION, INC.,** | ) ) ) | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | ) ) ) |  |

## CLASS ACTION COMPLAINT

Miguel Ramirez Jr. ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against ZTEX Construction, Inc., ("ZTEX" or "Defendant"), alleging as follows, based upon information and belief, investigation of counsel, and personal knowledge of Plaintiff.

### INTRODUCTION

1.     This class action arises from Defendant's failure to protect highly sensitive data.

2.     ZTEX lost control over its computer network and cybercriminals accessed highly sensitive personal information of 2,157 Texans, including at least full names, Social Security numbers, and financial account information ("the Data Breach").

3.     On information and belief, Defendant's computer systems were held hostage by the notorious Ransomware-as-a-Service ("Raas") cybercriminal group RansomHub, or one of its affiliates, at some point in October 2024. During this cyberattack RansomHub or its affiliates

1

obtained, *i.e.* stole, sensitive information belonging to ZTEX's current and former employees, and current and former clients.

4.      Upon information and belief, RansomHub or its affiliates were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PH—rendering it an easy target for cybercriminals.

5.      On information and belief, ZTEX failed to pay the ransom. Screenshots of some of the stolen data were posted on RansomHub's Dark Web website on October 29, 2024.

6.      Despite the fact ZTEX knew sensitive data had been stolen, ZTEX waited until April 2024—approximately 6 months after the Data Breach—before it finally announced the Data Breach to the Texas Attorney General began notifying Class Members about the Data Breach.

7.      However, ZTEX failed to post a Notice on its website, which is a common industry-standard practice, and provided no public details about the breach, aside from the information it reported to the Texas attorney general (number of Texans affected and types of information affected).

8.      ZTEX failed to disclose the nature of the Data Breach and the threat it posed, how the Data Breach happened, or why it took approximately 6 months before ZTEX finally began notifying some victims that cybercriminals had gained access to their highly private information.

9.      Defendant's deliberate failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

10.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

11.     In failing to adequately protect its former and current employees' and clients' information, adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its current and former employees and clients.

12.     Plaintiff and the Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust when Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

13.     Plaintiff Miguel Ramirez Jr. is a victim of the Data Breach. On information and belief, his name, Social Security number, and financial account information were exposed during the Data Breach.

14.     The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

15.     Plaintiff seeks, on behalf of himself and the Class, monetary damages and injunctive relief including lifetime credit monitoring and ID theft monitoring.

**PARTIES**

16.     Plaintiff Miguel Ramirez Jr. is a natural person and citizen of Odessa, Texas, where he intends to remain.

17.    Defendant ZTEX Construction Inc. is a business corporation incorporated in Texas, with its principal place of business at 1326 Henry Brennan Dr., El Paso, TX 79936. The registered agent for service of process is Myer J. Lipson, 1444 Montana Ave., Ste. 200, El Paso, Texas 79902.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Members of the proposed class and Defendant are citizens of different states, as Defendant has projects all over the country, and therefore has employees located in various states.[1]Additionally, there are over 100 putative Class Members. Defendant is a citizen of Texas.

19.    This Court has personal jurisdiction over Defendant because it is headquartered and has its principal place of business in the El Paso Division of the Western District of Texas, regularly conducts business in Texas, and has sufficient minimum contacts in Texas.

20.    Venue is proper in this Court because Defendant's principal office is in the El Paso Division of the Western District of Texas, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### *Defendant Collected and Stored the PII of Plaintiff and the Class*

21.    ZTEX is a heavy civil contractor based in Texas. Founded in 2006, ZTEX specializes in earthwork, underground utilities, asphalt paving, concrete paving, concrete retaining walls, gas line installation, directional drilling and other specialty items.[2]

---

[1] *Projects,* ZTEX CONSTRUCTION INC., https://www.ztexconstruction.com/projects/ (last visited April 24, 2025); (last visited April 24, 2025) (including reference to projects in Georgia, New Mexico, Kentucky, and Oklahoma).
[2] *About Us,* ZTEX CONSTRUCTION INC., https://www.ztexconstruction.com/about/ (last visited April 24, 2025); *ZTEX Construction Inc.,* LINKEDIN, https://www.linkedin.com/company/ztex-construction/about/ (last visited April 24, 2025).

Today, ZTEX provides services for a variety of industries and sectors, including federal, commercial, residential, and industrial.[3]

22.    Headquartered in El Paso, Texas, ZTEX employs over 200 individuals.[4]

23.    On information and belief, ZTEX accumulates highly private PII of its employees and clients. Given its age, ZTEX has accrued nearly 20 years of data and contracts.

24.    In collecting and maintaining its employees' and clients' PII, ZTEX agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

25.    ZTEX understood the need to protect its current and former employees' and clients' PII and prioritize its data security.

26.    ZTEX emphasizes the importance of safety on its website, stating, safety "is the top priority for every employee while performing any operation or activity."[5] It follows that secure and reliable data storage should be deeply important to ZTEX.

27.    Despite recognizing its duty to do so, on information and belief, ZTEX has not implemented reasonable cybersecurity safeguards or policies to protect the PII of its current and former employees and clients, or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, ZTEX leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees and clients' PII.

### Defendant Failed to Safeguard the PII of Plaintiff and the Class

28.    Plaintiff is a former employee of Defendant, having worked for Defendant approximately 6 years ago, for just a few short months.

---

[3] *About Us,* ZTEX CONSTRUCTION INC., https://www.ztexconstruction.com/about/ (last visited April 24, 2025).
[4] *ZTEX Construction Inc.,* LINKEDIN, https://www.linkedin.com/company/ztex-construction/about/ (last visited April 24, 2025).
[5] *Safety,* ZTEX CONSTRUCTION INC., https://www.ztexconstruction.com/ztexsafety/ (last visited April 24, 2025).

29.     Plaintiff received Defendant's Notice on or around April 21, 2025, informing him that his PII was compromised.

30.     Plaintiff was shocked to have received this notice because he reasonably believed that his data would have been destroyed or deleted once his employment with ZTEX ended.

31.     Plaintiff called ZTEX to ask for details about the Data Breach. ZTEX confirmed it sent him a breach notice, and refused to provide any additional information.

32.     As a condition of receiving employment from Defendant, Plaintiff provided Defendant with his PII.

33.     On information and belief, Defendant collects and maintains its current and former employees' and clients' unencrypted PII in its computer systems.

34.     In collecting and maintaining PII, Defendant implicitly agreed that it will safeguard the data using reasonable means according to state and federal law.

35.     In October 2024, for an unknown length of time, cybercriminals hacked Defendant's network and accessed extremely sensitive information, including social security numbers, financial account information, and protected health information.

36.     It is unclear when Defendant discovered the Data Breach. Defendant has only publicly disclosed how many Texans were impacted, and the types of information impacted.[6]

37.     Regardless of how long it took Defendant to discover the Data Breach, Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its employees' and clients' highly private information continuously over an unknown period of time.

---

[6] *Data Security Breach Reports – ZTEX Construction Inc.,* KEN PAXTON ATTORNEY GENERAL OF TEXAS, https://oag.my.site.com/datasecuritybreachreport/apex/DataSecurityReportsPage (last visited April 24, 2025).

38.    In April 2025–approximately six months after RansomHub took credit for the Data Breach—Defendant finally began notifying some Class Members the Data Breach.

39.    Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

40.    Despite its duties to safeguard PII, Defendant did not in fact follow industry standard practices in securing current employees', former employees', and clients' PII, as evidenced by the Data Breach.

41.    Additionally, Defendant did not follow industry standard practices regarding data retention and deletion. Defendant had no business maintaining Plaintiff's PII, considering he worked for ZTEX for only a few months approximately six years prior to the Data Breach.

42.    Defendant has not disclosed what additional controls it has implemented, if any, to improve its security in response to the Data Breach.

43.    The risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is substantially high given that the data stolen includes Social Security numbers. The fraudulent activity resulting from the Data Breach may not come to light for years.

44.    Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII (although in Plaintiff's case, his Social Security number was compromised). Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff and the Class's financial accounts.

45.    On information and belief, Defendant failed to adequately train its IT and data security patients on reasonable cybersecurity protocols or implement reasonable security

7

measures, causing it to lose control over its employees' and clients' PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach, and to stop cybercriminals from accessing the PII it stored in its network.

*46.*    Furthermore, Defendant obfuscates the nature of the breach, failing to clearly inform the public when Defendant discovered the breach, how it happened, whether Defendant paid a ransom to retrieve the stolen data back, and why it took six months for Defendant to start notifying victims.

### RansomHub or one of its Affiliates Obtained the PII of Plaintiff and the Class and Posted it for Sale on the Dark Web

47.    Through its inadequate security practices, Defendant exposed Plaintiff's and the Class Members' PII for theft and sale on the Dark Web.

48.    Worryingly, the cybercriminals that obtained Plaintiff's and Class members' PII appear to be the notorious cybercriminal group "RansomHub."[7]

49.    The Federal Bureau of Investigation (FBI), the Cybersecurity and Infrastructure Security Agency (CISA), the Multi-State Information Sharing and Analysis Center (MS-ISAC), and the Department of Health and Human Services (HHS) released a joint advisory to inform the public of the threat RansomHub poses.[8]

50.    RansomHub emerged as a ransomware group in February 2024 and has encrypted and exfiltrated data from at least 210 victims representing the water and wastewater, information technology, government services and facilities, healthcare and public health, emergency services, food and agriculture, financial services, commercial facilities, critical manufacturing,

---

[7] *Victims*, RANSOMWARE LIVE, https://www.ransomware.live/search/ztex (last visited April 24, 2025); *RansomHub,* RANSOMLOOK, https://www.ransomlook.io/search (last visited April 24, 2025); *Ztex Construction*, RANSOMWARE POSTS LEAK SITE MONITORING, https://ransom.privtools.eu/ (last visited April 24, 2025).
[8] #StopRansomware: RansomHub Ransomware (Aug. 29, 2024), *Cybersecurity Advisory,* CISA.GOV, https://www.cisa.gov/news-events/cybersecurity-advisories/aa24-242a (last visited April 24, 2025).

transportation, and communications critical infrastructure sectors. Its affiliates leverage a double-extortion model by encrypting systems and exfiltrating data to extort victims.[9]

51.    According to Infosecurity Magazine, RansomHub is the *'number one ransomware operation in terms of claimed successful attacks'* (as of October 2024, when it posted the data it stole from ZTEX on its Dark Web website).[10]

52.    RansomHub was the second most-detected variant in the third quarter of 2024. And it was very close to the leader, with a difference of only about 1%. This marks RansomHub as one of the biggest RaaS threats to US operations this year.[11]

53.    On or around October 29, 2024, RansomHub claimed credit for the Data Breach in a post on its Dark Web website.[12]

54.    A screenshot of some of the data it posted to its Dark Web website is copied below:



2024:10:29 19:27:50

**RansomHub**                                     Home/  About/  Contact/

## www.ztexconstruction.com

ZTEX Construction Inc. was founded in 2006 by Richard "Dick" Ortiz. One of the first projects completed by ZTEX was the Outlet Shoppes of El Paso, also known as the Sun Valley Outlet Mall. This contract was worth more than $5M and ZTEX self-performed 90% of the work.  Since then, ZTEX has been involved in many of the largest projects in west Texas and southern New Mexico.

---

[9] *Id.*

[10] Phil Muncaster, *RansomHub Overtakes LockBit as Most Prolific Ransomware Group* (Oct. 17, 2024) INFOSECURITY MAGAZINE, https://www.infosecurity-magazine.com/news/ransomhub-overtakes-lockbit/ (last visited April 24, 2025).

[11] Orlaith Traynor, *RansomHub: A Rising Danger in the Raas Market* (Dec. 12, 2024), CYBELANGEL, https://cybelangel.com/ransomhub-a-rising-danger-in-the-raas-market/ (last visited April 24, 2025).

[12] *Victims*, RANSOMWARE LIVE, https://www.ransomware.live/search/ztex (last visited April 24, 2025); *RansomHub,* RANSOMLOOK, https://www.ransomlook.io/search (last visited April 24, 2025); *Ztex Construction*, RANSOMWARE POSTS LEAK SITE MONITORING, https://ransom.privtools.eu/ (last visited April 24, 2025).

JR Construction Solutions LLC
9633 Farrell RD
El Paso, TX 79927
(915) 231-8996



ZTEX CONSTRUCTION.

**I N V O I C E**

| | |
|---|---|
| Invoice # | 0000355 |
| Invoice Date | 01/19/2024 |
| Due Date | 01/19/2024 |

| Item | Description | Unit Price | Quantity | Amount |
|---|---|---|---|---|
| Service | ROCK WALL | 44.00 | 150.00 | 6,600.00 |
| | 2023-03 cc260018ph9 10%Retainage Approved $5,940.00 | | | |

NOTES: STONLAKE ROJAS

| | | |
|---|---|---|
| Subtotal | | 6,600.00 |
| Total | | 6,600.00 |
| Amount Paid | | 0.00 |
| Balance Due | | $6,600.00 |

1.png 109.58 KB

| | | | | | | |
|---|---|---|---|---|---|---|
| **Marketing Department** | | | | | | |
| 25.01.2023 | $ 7,500.00 | Sponsorship – FORE UNITee | 30.01.2023 | El Paso Holocaust Museum | Topgolf Tournament | |
| 13.02.2023 | $ 750.00 | CONTRIBUTION TO YMCA | 20.03.2023 | YMCA of EL PASO | Lady D's Golf Tournament | |
| 24.02.2023 | $ 147.36 | Contribution - Drinks and Snac | 2.03.2023 | Sams Club | District 3 Dog Park Grand Opening | |
| 2.03.2023 | $ 5,000.00 | CC-2649 AWWA SPONSOR | 2.03.2023 | Texas Section AWWA | Golf Tournament | |
| 2.03.2023 | $ 2,500.00 | CC-2649 AWWA SPONSOR | 2.03.2023 | Texas Section AWWA | EPX Donation Golf Tournament | |
| 2.03.2023 | $ 8,059.17 | CC-2649 | 2.03.2023 | 4IMPRINT | EXPO Merch | |
| 3.03.2023 | $ 300.00 | EXPO Table Setup | 17.03.2023 | Paypal | Registration | |
| 21.03.2023 | $ 1,200.00 | Americas Trial Blazers | | Football Booster | Omar Veles Son Donation | |
| 23.03.2023 | $ 20,000.00 | CONTRIBUTION SPONSOR PACKAGE | 23.03.2023 | Hi Lo ProRodeo LLC | Rodeo | |
| 23.03.2023 | $ 100.00 | Contribution to YMCA | 23.03.2023 | YMCA of EL PASO | Lady D's Golf Tournament | |
| 31.03.2023 | $ 7,500.00 | HISPANIC  COMMERCE | 31.03.2023 | Hispanic Chamber of Commerce | | |
| 31.03.2023 | $ 500.00 | Donation to support ms. Raely | 31.03.2023 | Rodeo Austin Livestock Auction | | |
| 5.04.2023 | $ 150.00 | CONTRIBUTION EASTLAKE CLUB | 5.04.2023 | EAST LAKE FOOTBALL CLUB | Hector Martinez Son Donation | |
| 10.04.2023 | $ 1,000.00 | CONTRIBUTION CLIMATE CHARTER | 11.04.2023 | El Paso Association of Contract | | |
| 8.05.2023 | $ 1,000.00 | San Elceario Catholic Church | | Men's English ACTS Retreat | | |
| 12.05.2023 | $ 1,500.00 | Juneteenth Event | | Support District 2 | | |
| 18.05.2023 | $ 15,000.00 | 2023  UTEP Golf Tournament | | Title Sponsorship | Genaro | |
| 2.06.2023 | $ 5,000.00 | City of El Paso | | District 3 | Movies at the Park Event | |
| 6.07.2023 | $ 1,000.00 | Pebble Hils HS Baseball | | Jesus Quinones | | |
| 14.07.2023 | $ 2,500.00 | KFOX | | Back To School | | |
| 24.07.2023 | $ 2,720.75 | Child Criss Center & El Paso Center for Children | | Back To School | | |
| 27.07.2023 | $ 3,500.00 | Fundraiser Golf Tournament | | Boys & Girls Clun of El Paso | Donated a 4 player team for EP Water | |
| 27.07.2023 | $ 600.00 | Child Criss Center | | 5k Run | | |
| 7.08.2023 | $ 1,600.00 | 6thAnnual ACEC El Paso Golf Tournament. | | STEAM and UTEP Scholarship Endowment | | |
| 14.08.2023 | $ 5,000.00 | El Paso Hockey Association | | Junior League | | |
| 9.08.2023 | $ 500.00 | Golf for Good | | 4th Annual | Genaro | |
| 15.08.2023 | $ 3,000.00 | Pebble Hils HS Baseball | | Jesus Quinones | | |
| 14.08.2023 | $ 1,000.00 | YISD District (Eastwood H.S.) | | Sonia Alvarez | | |
| 31.08.2023 | $ 1,600.00 | 2023 ANNUAL TSPE EL PASO CHAPTER GOLF TOURNAMENT | | Marc Martinez | Genaro | |
| 31.08.2023 | $ 1,299.00 | Green Global Enviromental (ANNUAL SWPPP TRAINING) | | Lineth Sanchez | Genaro | |
| 1.09.2023 | $ 5,000.00 | YMCA Turkey Trot 5k Race | | Jeremy Jordan | | |
| 7.09.2023 | $ 3,000.00 | HUB International 24th Annual EPA Golf Tournament - Prize Sponsor | | El Paso Association of Contractors | | |
| 13.10.2023 | $ 1,500.00 | Pebble Hils HS Baseball | | Jesus Quinones | | |

2.png 146.39 KB



database.png 138.54 KB

10/04/2024 04:19:39 PM                      **ZTEX Construction Inc.**                        Page 3 of 3
                                             **Balance Sheet**
                                             As of 10/04/24

| | | |
|---|---|---:|
| | JD6554 | 131,739.34 |
| | CF4617 | 459,467.51 |
| | Deferred tax liability -LT | 1,902,221.60 |
| **Total Long-Term Liabilities** | | 13,585,929.47 |
| | | |
| **Total Liabilities** | | 39,798,801.05 |
| | | |
| **Capital** | | |
| | Capital Stock | 988,040.00 |
| | Capital in excess of Par | 45,960.00 |
| | Treasury Stock | (14,285,800.00) |
| | Retained Earnings | 27,970,924.20 |
| | Net Profit (Loss) | 23,409,512.26 |
| **Total Capital** | | 38,128,636.46 |
| | | |
| | **Total Liabilities & Capital** | 77,927,437.51 |

3.png  55.83 KB



elpasso plan.png  658.71 KB

55.    As seen above, RansomHub's post provided photocopies of confidential documents from ZTEX's network.[13]

56.    Thus, on information and belief, INC Ransom has *already leaked* the stolen PII of thousands of Defendant's current and former employees.

57.    Thus, on information and belief, Plaintiff's and the Class's stolen PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

58.    Therefore, upon information and belief, ZTEX intentionally downplays the severity of the Data Breach and the threat it poses to thousands of individuals.

***Defendant Knew—or Should Have Known—of the Risk of a Data Breach***

59.    It is well known that PII, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

60.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

61.    In fact, out of twenty industries that were analyzed, the construction industry was targeted the most and witnessed the highest count of ransomware attacks from January 2022 to January 2023.[14]

62.    In 2024, a 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[15]

63.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to

---

[13] *Id.*

[14] *Ransomware Statistics: Who is targeted the most?* NORDLOCKER, https://nordlocker.com/ransomware-attack-statistics/ (last visited April 24, 2025).

[15] *2024 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited April 24, 2025).

prepare for and are able to thwart such an attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[16]

64.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in the construction industry, including Defendant.

65.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

66.    This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included extortion and threatening to release stolen data.

67.    In light of the information readily available and accessible before the Data Breach, Defendant, knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Data breaches are so prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

**Plaintiff's Experience and Injuries**

68.    Plaintiff is a former employee of Defendant and a Data Breach victim.

---

[16] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited April 24, 2025).

69.     As a condition of receiving employment, Defendant required Plaintiff to provide his PII, including at least his name, Social Security Number, and financial information.

70.     Plaintiff provided his PII to Defendant and trusted that the company would use reasonable measures to protect it according to state and federal law.

71.     Additionally, Plaintiff reasonably expected that his personal information would be destroyed once his employment with Defendant ended.

72.     As a result of its inadequate cybersecurity measures and data destruction policies, Defendant exposed Plaintiff's PII for theft by cybercriminals and sale on the dark web.

73.     Indeed, given RansomHub's Dark Web post combined with the Notice Plaintiff has received, Plaintiff's PII has already been published, or will be published imminently by cybercriminals for further theft and sale on the Dark Web.

74.     Plaintiff does not recall ever learning that his PII was compromised in former a data breach incident, other than the breach at issue in this case.

75.     Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to promptly notify him about the Data Breach.

76.     Plaintiff suffered actual injury from the exposure of his PII —which violates his rights to privacy.

77.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

78.     As a result of the Data Breach, Plaintiff has spent time and made reasonable efforts to mitigate its impact, including but not limited to researching the Data Breach, reviewing credit card and financial account statements and monitoring his credit information.

79.     Plaintiff will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. Plaintiff is experiencing anxiety, distress, and fear regarding how the exposure and loss of his Social Security number will impact him. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

80.     Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of unauthorized third parties. This injury is worsened by Defendant's failure to promptly inform Plaintiff about the Data Breach.

81.     Following the Data Breach, Plaintiff has experienced a substantial increase in scam and spam text messages and emails, some of which address him by name.

82.     Once an individual's PII is for sale and access on the Dark Web, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[17] On information and belief, Plaintiff's name, Social Security number, and financial information were compromised as a result of the Data Breach.

83.     Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Defendant's possession despite the fact he is no longer employed by Defendant, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

84.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

---

[17] *What do Hackers do with Stolen Information,* AURA, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited April 24, 2025).

85.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, uncompensated lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

     a.   The loss of the opportunity to control how their PII is used;

     b.   The diminution in value of their PII;

     c.   The compromise and continuing publication of their PII;

     d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

     e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

     f.   Delay in receipt of tax refund monies;

     g.   Unauthorized use of stolen PII; and

     h.   The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

86.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

87.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

88.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

89.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

90.    One such example of criminals using PII for profit is the development of "Fullz" packages.

91.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

92.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is

reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

93.     Defendant disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, extortion, and exposure of stolen PII.

94.     Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest opportunity to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Consumers Prioritize Data Security***

95.     In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[18] Therein, Cisco reported the following:

   a.     "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[19]

---

[18] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).
[19] *Id*. at 3.

b.    "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[20]

c.    89% of consumers stated that "I care about data privacy."[21]

d.    83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[22]

e.    51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[23]

f.    75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[24]

### *Defendant Failed to Adhere to FTC Guidelines*

96.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

97.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a.    protect the personal customer information that they keep;

b.    properly dispose of personal information that is no longer needed;

---

[20] *Id.*
[21] *Id.* at 9.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 11.

      c.      encrypt information stored on computer networks;

      d.      understand their network's vulnerabilities; and

      e.      implement policies to correct security problems.

98.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

99.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

100.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

101.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' and clients' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

102.    Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees regarding cybersecurity; strong passwords; multi-layer security, including firewalls,

21

anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

103.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

104.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet one or more of the standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards in reasonable cybersecurity readiness.

105.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

106.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach of ZTEX Construction Inc.'s network, including all those individuals who received notice of the breach.

107.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including its staff and immediate family.

108.     Plaintiff reserves the right to amend the class definition.

109.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

110.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements.

111.     **Numerosity.** The Class members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 2,157 members.

112.     **Commonality and Predominance.** Plaintiff's and the Class Members' claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

> a.     if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;
>
> b.     if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;
>
> c.     if Defendant was negligent in maintaining, protecting, and securing PII;

     d.    if Defendant breached contract promises to safeguard Plaintiff and the Class's PII;

     e.    if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

     f.    if Defendant's Breach Notice was reasonable;

     g.    if the Data Breach caused Plaintiff and the Class injuries;

     h.    what the proper damages measure is; and

     i.    if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

113.    **Typicality.** Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

114.    **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

115.    **Appropriateness.** The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

116.    **Ascertainability.**  All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some victims and sent them data breach notices.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

117.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

118.    Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

119.    Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

120.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

121.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff's and Class Members' PII.

122.    Defendant owed—to Plaintiff and Class Members—at least the following duties to:

    a.    exercise reasonable care in handling and using the PII in its care and custody;

    b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

    c.    promptly detect attempts at unauthorized access;

d.    notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their PII.

123.    Also, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

124.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

125.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

126.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of employment from Defendant.

127.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware or otherwise.

128.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff's and Class Members' and the importance of exercising reasonable care in handling it.

129.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

130.    Defendant breached these duties as evidenced by the first and second Data Breach.

131.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff 'and Class Members' PII by:

a.    disclosing and providing access to this information to third parties and

b.    failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

132.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury.

133.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class Members' injuries-in-fact.

134.    Defendant has admitted that the PII of Plaintiff and the Class was accessed by an intruder to its systems.

135. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

136. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost value of their PII, and uncompensated lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

### SECOND CAUSE OF ACTION
#### Negligence *per se*
#### (On Behalf of Plaintiff and the Class)

137. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

138. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

139. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class Members' sensitive PII.

140.   Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

141.   Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

142.   The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

143.   But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

144.   The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

145.   Defendant's violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

146.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

147. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

148. Defendant offered to provide employment and/or services to Plaintiff and members of the Class if, and in exchange, Plaintiff and members of the Class provided Defendant with their PII.

149. In turn, Defendant agreed it would not disclose the PII it collects to unauthorized persons.

150. Plaintiff and the members of the Class accepted Defendant's offer by providing PII to Defendant in exchange for Defendant's services.

151. Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII.

152. Plaintiff and the members of the Class would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

153. Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusions into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

      a.    Failing to properly safeguard and protect Plaintiff's and members of the Class's PII;

      b.    Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

      c.    Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

154.    The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

155.    Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

156.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

157.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

158.    Defendant failed to advise Plaintiff and members of the Class of that there was not one but two Data Breach, and failed to send Notice to the victims promptly and sufficiently.

159.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

160.    Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

161.    Plaintiff, on behalf of himself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

162.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

163.    Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

164.    Upon information and belief, Defendant funds its data security measures from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

165.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

166.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they either provided services, in the form of employment, or purchased services from Defendant and/or its agents and in so doing provided Defendant or its agents with their PII. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their PII protected with adequate data security.

167.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

168.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by paying

Defendant as part of Defendant rendering services, a portion of which was to have been used for data security measures to secure Plaintiff's and Class Members' PII, and by providing Defendant with their valuable PII.

169.    Defendant was enriched by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid the data security obligations at the expense of Plaintiff and the Class by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

170.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

171.    Defendant acquired the monetary benefit and PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

172.    If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant either directly or through their own financial institutions.

173.    Plaintiff and Class Members have no adequate remedy at law.

174.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft,

and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

175.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm.

176.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

### FIFTH CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

177.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

178.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

179.    Defendant owed a duty to Plaintiff and Class Member to keep their PII confidential.

180.    The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person. It constitute an invasion of privacy both by disclosure of nonpublic facts, and intrusion upon seclusion.

181.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' PII constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

182.    Defendant's failure to protect Plaintiff's and Class Members' PII acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

183.    Defendant knowingly did not notify Plaintiff's and Class Members in a timely fashion about the Data Breach.

184.    Because Defendant failed to properly safeguard Plaintiff's and Class Members' PII, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

185.    As a proximate result of Defendant's acts and omissions, the PII of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

186.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII is still maintained by Defendant with their inadequate cybersecurity system and policies.

187.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their PII. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

188.    Plaintiff and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII.

189.    Plaintiff and Class Members seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**SIXTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

190.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

191.    Given the relationship between Defendant and Plaintiff and the Class Members, where Defendant became guardian of Plaintiff's and Class Members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII; (2) to timely notify Plaintiff and Class Members of the Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

192.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them—especially to secure their PII.

193.    Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security practices.

194.    Defendant breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

195.    Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach within a reasonable and practicable time period.

196.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### SEVENTH CAUSE OF ACTION
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

197.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

198.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

199.    In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

200.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the data entrusted to it;

    b.    Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c.    Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d.    Defendant breaches of its duties caused—and continues to cause—injuries to Plaintiff and Class members.

201.    The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to it.

202.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach.

203.    And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

204.    If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendant could experience if an injunction is issued.

205.    An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of all others similarly situated, prays for relief as follows:

a.    For an order certifying the Class, and naming Plaintiff as representatives of the Class, and Plaintiff's attorneys as Class Counsel;

b.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c.  For damages in an amount to be determined by the trier of fact;

d.  For an order of restitution and all other forms of equitable monetary relief;

e.  Declaratory and injunctive relief as described herein;

f.  Awarding Plaintiff reasonable attorneys' fees, costs, and expenses as otherwise allowed by law;

g.  Awarding pre- and post-judgment interest on any amounts awarded; and

h.  Awarding such other and further relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, individually and on behalf of the putative Class, demands a trial by jury on all claims so triable.


Dated:  April 25, 2025                    Respectfully submitted,


                                          */s/ Joe Kendall*
                                          JOE KENDALL
                                          Texas Bar No. 11260700
                                          **KENDALL LAW GROUP, PLLC**
                                          3811 Turtle Creek Blvd., Suite 825
                                          Dallas, Texas 75219
                                          Telephone:  214/744-3000 / 214/744-3015 (fax)
                                          jkendall@kendalllawgroup.com

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

*Pro hac vice forthcoming*

***Attorneys for Plaintiff and the Proposed Class***